# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

**JUSTIN CRAIG GANOE, an individual; and SARAH WEISS a/k/a SARAH GANOE, an individual,**

    Plaintiffs,

v.

**FRANCESCO GRECO, an individual; and ANTHONY MIVELAZ, an individual**

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their attorney, Joseph O'Keefe of Baker Law Group, LLC, assert the following claims for relief against the above-named Defendants as follows:

### JURISDICTION AND VENUE

1. Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction of all civil actions in which the amount of controversy exceeds $75,000.00 and is between citizens of different States. This action is brought by Plaintiffs Justin Craig Ganoe and Sarah Weiss (aka Sarah Ganoe), who are citizens of the State of California. The Defendants in this action are Francesco Greco and Anthony Mivelaz—who, based upon information and belief, are citizens of Florida and Indiana, respectively.

2.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391 as the acts alleged took place within the State of Colorado.

## PARTIES

3.      Plaintiffs hereby incorporate by reference all prior allegations set forth in this Complaint.

4.      Plaintiffs Justin Craig Ganoe and Sarah Weiss (aka Sarah Ganoe) (hereinafter collectively the "Plaintiffs") are residents of the State of California. At all relevant times, the Plaintiffs have been owners in VaporLife, LTD ("VaporLife").

5.      Based on information and belief, Defendant Francesco Greco (hereinafter "Defendant Greco") is a resident of the State of Florida, with an address of 8604 Stargazer Street, Sarasota, FL 34238.

6.      Based on information and belief, Defendant Anthony Mivelaz (hereinafter "Defendant Mivelaz") is a resident of the State of Indiana, with the address of 1697 W. Morgan Lane, Pekin, IN 47165.

## FACTUAL BACKGROUND

7.      Plaintiffs hereby incorporate by reference all prior allegations set forth in this Complaint.

8.      On October 25, 2019, a Contract for Sale and Purchase of Membership Interests (hereinafter the "Contract") was entered into between the Plaintiffs, who owned 100% of the membership interests in VaporLife, and InnoVapor, LLC (hereinafter "InnoVapor"), which was owned by Defendants. *See* Contract for Sale and Purchase of Membership Interests, dated October 25, 2019, attached hereto as **Exhibit 1.**

9.      Per the Contract, InnoVapor would purchase ninety percent of all authorized and

2

outstanding membership interests in VaporLife, with the Plaintiffs retaining the remaining ten percent. In exchange, InnoVapor agreed to pay a total of $1,925,000.00.

10. To finance the purchase price, InnoVapor executed two Promissory Notes in favor of Plaintiff Justin Craig Ganoe. *See* Promissory Notes dated October 25, 2019, attached hereto as **Exhibits 2** and **3**.

11. The first of these Promissory Notes (hereinafter the "First Promissory Note") was for the principal amount of $50,000.00, and the second (hereinafter the "Second Promissory Note" and together with the First Promissory Note, the "Notes") was in the original principal amount of $1,575,000.00. *Id.*

12. Defendants Greco and Mivelaz signed personal guarantees for both Notes. *Id.*

13. Pursuant to the Notes, the First Promissory Note was to be paid in monthly installments of $10,000.00, to commence February 1, 2020; and the Second Promissory Note was to be paid in seventy-two monthly installments of $21,875.00, to commence December 1, 2019.

14. InnoVapor also agreed to refinance the total debt incurred pursuant to the Contract after eighteen months and that, if unable to do so, it would continue to attempt to refinance at least semi-annually thereafter until the Notes were paid in full.

15. At the time of the sale, VaporLife operated multiple vapor/electronic cigarette stores in Colorado and one in California.

16. Following the sale of VaporLife, InnoVapor made required payments to the Plaintiffs, although said payments were often late by a couple of days. No major issues surfaced until approximately February 1, 2023, when the Plaintiffs discovered that a large amount of money had been deposited in VaporLife's bank accounts in the form of loans. This was unexpected, as Defendant Mivelaz had claimed that Defendants had not received any loans and were still in the process of

attempting to refinance.

17. On or about February 14, 2023, the Plaintiffs contacted Jo Yosek, who had provided financial services to VaporLife between October 2016 and January 2021, and then during early 2023. *See* Affidavit of Jo Yosek, attached hereto as **Exhibit 4.**

18. During her time working with InnoVapor in early 2023, Ms. Yosek discovered that Defendants had committed the following fraudulent acts:

   a. Failing to pay over $100,000.00 in sales and payroll taxes since September 2022;

   b. Taking out over $2,000,000.00 in loans since purchasing VaporLife, most of which had subsequently been withdrawn from the VaporLife bank account or distributed to managing members of InnoVapor, and virtually none of which had been used to expand the VaporLife business; and

   c. Charging customers an erroneous "nicotine tax," leading to revenue in the amount of over $800,000.00, none of which had been reported or paid to the State of Colorado.

19. Ms. Yosek informed the Plaintiffs of the unpaid sales and payroll taxes, and also attempted to contact Defendants Greco and Mivelaz about how they wished to proceed with regard to paying said taxes. Defendants Greco and Mivelaz never responded.

20. By the beginning of March 2023, approximately $125,000.00 in unpaid sales and payroll taxes was due, and two store locations had not had their February rents paid. Moreover, the Indiana Department of Revenue had begun levying the VaporLife bank account for the unpaid taxes.

21. On March 13, 2023, Defendants failed to make payments under the Notes and therefore defaulted. Plaintiffs have received no further payments under the Notes.

22. On or about March 13, 2023, the Plaintiffs discovered that Defendants Greco and Mivelaz were considering filing for bankruptcy.

23. On March 14, 2023, the Plaintiffs attempted to have Defendants Greco and Mivelaz removed from all VaporLife bank accounts and requested the cessation of all automated clearing house (ACH) payments. On the same date, the Plaintiffs first learned about an erroneous "nicotine tax" that Defendants had been charging to customers.

24. By the end of March 2023, the Kentucky Department of Revenue had also begun levying the VaporLife bank account for unpaid taxes. Meanwhile, the Plaintiffs attempted repeatedly to contact Defendants Greco and Mivelaz to discuss the situation and obtain clarification, but the latter never responded.

25. Based on information and belief and a review of VaporLife's bank account, which Plaintiffs have access to but not legal control over, Defendants have removed more than $2,000,000 from the VaporLife account in the form of cash withdrawals and personal car payments.

26. VaporLife's assets are not currently accessible to Plaintiffs.

## FIRST CAUSE OF ACTION
(*Breach of Contract*)

27. Plaintiffs hereby incorporate by reference all prior allegations set forth in this Complaint.

28. On October 25, 2019, InnoVapor entered into a Contract and two Promissory Notes with the Plaintiffs, pursuant to which the former agreed to pay the latter a total of $1,925,000.00 in exchange for the former's purchase of ninety percent of Plaintiff VaporLife's business interests.

29. Defendants Greco and Mivelaz executed both Notes as guarantors for InnoVapor.

30. The Plaintiffs performed their duties by conveying to InnoVapor ninety percent of Plaintiff VaporLife's membership interests.

31. InnoVapor ceased making payments on the Promissory Notes as of March 2023, thereby breaching the terms of the Contract and Promissory Notes.

32. As Defendants Greco and Mivelaz are guarantors for the Promissory Notes and have failed to make the required payments, they too are liable for breach of contract.

33. Plaintiffs have been damaged by Defendants failure to perform under the Notes and their guarantees of the same.

34. The Notes provide that InnoVaper promised to pay all costs of collection, including reasonable attorneys' and costs, and Defendants are bound to the terms of the Notes through their personal guarantees.

## SECOND CAUSE OF ACTION
*(Fraudulent Transfer, C.R.S. § 38-8-101 et seq,)*

35. Plaintiffs hereby incorporate by reference all prior allegations set forth in this Complaint.

36. Pursuant to C.R.S. § 38-8-105(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation…[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

37. Pursuant to C.R.S. § 38-8-105(2)(a) and (i), in determining actual intent, consideration may be give to several factors, including without limitation whether "[t]he transfer or obligation was to an insider" or whether "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."

38. Defendants utilized revenue earned through their interest in VaporLife for their own purposes, without making any contributions to the business or toward the payment of the Notes.

39. Defendants took out additional loans on behalf of VaporLife without informing the Plaintiffs and proceeded to use the disbursals from said loans for their own purposes, without making any contributions to the business or toward the payment of the Notes.

40. In so doing, Defendants acted with actual intent to delay or defraud their creditor—to wit, the Plaintiffs.

41. The transfers in question were made to insiders—to wit, Defendants, as owners of VaporLife.

42. The transfers occurred shortly after the debts were incurred.

43. The transfers were concealed from and not disclosed to the Plaintiffs, who did not become aware of the nature of Defendants' activities until the beginning of 2023.

44. Defendants subsequently absconded, have ceased all communication with the Plaintiffs, and, based upon knowledge and belief, are considering bankruptcy.

45. C.R.S. § 38-8-108 provides that a creditor may obtain, "[w]ith respect to a transfer made or obligation incurred that is fraudulent under section 38-8-105 (1) (a), a judgment for one and one-half the value of the asset transferred or for one and one-half the amount necessary to satisfy the creditor's claim, whichever is less, together with the creditor's actual costs."

### THIRD CAUSE OF ACTION
*(Unjust Enrichment)*

46. Plaintiffs hereby incorporate by reference all prior allegations set forth in this Complaint.

47. Defendants received benefits at Plaintiffs' expense, including a majority ownership share in VaporLife.

48. It would be unjust for Defendants to retain these benefits without commensurate compensation for Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a. Judgment for damages for breach of contract for failure to pay the Notes;

b. Judgment in the amount of one and one-half the amount necessary to satisfy creditor's claim or one and one-half the value of the asset transferred, whichever is less, pursuant to C.R.S. § 38-8-108(c);

c. An award of attorneys' fees and costs pursuant to the Notes and applicable law; and

d. Such other and further equitable and legal relief as this Court deems just and proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Dated:   December 8, 2023

              _s/ Joseph O'Keefe_
Joseph O'Keefe, CO Bar # 52228,
PA Bar # 77068
BAKER LAW GROUP, LLC
8301 E Prentice Ave, #405
Greenwood Village, CO 80111
*Attorney for Plaintiffs*